I really won't be able to help you, and in defense, Mr. Elliott S. Wixor. I really won't be able to help you. Thank you. At the meeting, Mr. Gerald E. Lillard. Mr. Wixor. Is it Witzer or Witzer, Justice Wixor? Is it hard C? It's kind of a C as in S. Well, if it's a German name, it would be pronounced in German, Witzer, I think. Yeah. Polish, so. Okay. Very good. Do you know what it means by any chance? Not a clue. Not a clue. Is that bad? Maybe I should find that out now. I feel bad about that. Well, may it please the Court, this case falls into the mundane world of commercial leasing, so I apologize in advance. But actually, I obviously say that tongue-in-cheek because there is an important issue here as it relates to the Illinois Enforceable Detainer Act. And I think depending on how the court rules could have implications on that act for years to come. So the things that I'd like to discuss today are somewhat contained in the brief, and I will give an overview, high level. I will not recite the facts. It's contained in our brief, and we'll get into the great details of the many cases we cited. But we do have a commercial lease as a result of a purported default that the plaintiff IPT claimed. They filed a three-sentence, not three-paragraph, but a three-sentence forcible detainer act claim under the act. That claim filed in or about July of 2016 claimed approximately $109,000 in damages in past due rent. That was the only claim that was ever filed in the form of a complaint by IPT, the plaintiff. So that's the first issue that I'd like to discuss, which is the application of the facts, the lease, to the Forcible Detainer Act. The second one is the notice provisions contained in paragraph 10.01c of the lease. The defendant, Star Creations, in the trial court contended that they were entitled to notice under the provisions of the lease before they could be held responsible for the damage claim that the court in the trial court ultimately entered. Another issue was that Illinois requires set-offs. The damage claim was apparently based upon bringing the property back into the condition it was at the time it was turned over to your client? That's correct, post-termination covenant. And a security deposit was involved in this case, was it not? It was involved in this case, but let me just address that for one moment. It is interesting that you point that out because I think it is a fact that really ultimately weighs in favor of some type of relief for this court in favor of Star Creations, and let me tell you why. At the time this case was filed, it's in the record. At the time the case was filed, this plaintiff had already seized the security deposit by sending notice to Star Creations Bank that the security deposit was in the form of a letter of credit. So before the case was filed, assuming the $109,000 of rent was due, it actually wasn't due because the security deposit was seized by this plaintiff, taken but never applied. Let me ask a question. Pursuant to the lease, was the security deposit to be used for rent or was it specifically excluded for use for rent but was to be used for any damage that may have occurred? It appears, when I use the word damage in a very large sense, meaning damages for unpaid rent or damages for physical damage to the property. So it's a very wide-encompassing provision in the lease. The security deposit can be used for any reason, but once it's taken, it has to be credited. So keep in mind, at the time that it was taken, it was never applied, ever. But it had been applied to the past due rent because, again, this, quote, damage claim to the property had not accrued and could not possibly have accrued until possession was turned over a year and a half later. But you, on behalf of your client, did file a counterclaim to have that somehow properly applied, returned. Well, I think you asked for return first and then maybe application. I agree. That is a correct statement of fact. Was it a setup or a counterclaim? So that's interesting that you raise that. So something that I learned in practicing a little bit now, we filed it, and the record will reveal this, we filed it as an affirmative defense. But in our great state of Illinois, I mean that very truly. I believe that. I don't say that tongue-in-cheek. Our great state requires that claim to be filed as a counterclaim. It's a very technical item. It just is. So we removed it as an affirmative defense. I don't quite recall procedurally how we did that. We may have stricken it voluntarily and then refiled it as a counterclaim, which then left the plaintiff with the sort of procedural option to file affirmative defenses, which they did on that counterclaim. But at the time, if you look at the timing of it all, in July of 2016 when they filed their three-sentence claim for unpaid rent and possession, the security process had been taken. It was not applied. And we sat and sat and sat and waited until post-possession came around. It still wasn't applied. Had it been applied, there would be no past-due rent and there would be no real basis for the foreclosure. Did the court have jurisdiction to entertain your counterclaim? They did, indeed, because under case law, anything that's germane to the question of possession can be brought. So, for example, and might I add also, anything – I think it seems somewhat obvious that two things that can be brought and enforceable is the issue of possession and the issue of unpaid rent. And you are allowed to file an affirmative defense for set-off, which it really is a counterclaim. But that affirmative defense for set-off allows you to defeat the past-due rent claim. I did not – so two issues. Possession – you're not entitled to possession because you have my security deposit that you did not apply. If you apply the security deposit, I would owe you nothing. And the evidence reveals that because when finally the past-due rent claim was adjudicated, finally, that was $89,000. Had the court looked at just the past-due rent and the counterclaim for the unapplied security deposit, Star Creations would have had a credit of $11,000. And under any theory of law, they would have won on their counterclaim. Well, from July 17th – no, 27th, pardon me, 2016, until the time that the lease would have ended and the property was vacated, February 8th of 2017, was any rent paid during that period of time? Rent was paid in full through that time if you – so a monthly rent was paid. I'm not talking about the security deposit. Were there checks written by Star to IPT during that period of time? Yes. The record should reveal that there was an – I believe it was an agreed order where Star Creations would pay on a monthly basis an appropriate amount of rent as agreed between IPT and Star Creations. Well, in fact, you just said that we sat and we sat and we sat. This case got continued for about four months, maybe closer to five, for purposes of settlement and repair, replacing the property into its original, but something apparently happened that wasn't – and I assume it had a lot to do with the money that was owed for rent. Is that correct? It had everything to do with the – I will say this candidly, the plaintiff is going to come up here and disagree with that, but the statement I'm about to make is in the eyes of this defendant, Star Creations, the only thing ever to be tried here was going to be past due rent, which is why we filed a motion in Luminae at trial when all of these other damage claims came up. But they're not rent claims, they're damage claims. And therefore, the court had no jurisdiction to hear those for the two reasons that they're not allowed to be heard since this is a court – the trial court's a court of limited or special jurisdiction, as Campana points out, the second district case. And Milton also chimes in. Milton's a newer case that was kind of – we didn't include it in our original brief because of the timing, I think, of when it came down in June of 2018 of this year. But it's very clear to me that these are not the type of claims that should be adjudicated because the law says they can't be adjudicated in this court of special and limited jurisdiction. So, you know, if you look at – if you do look at – Didn't the counterclaim give jurisdiction to the court? There's no way it could have because in this case, there's – I would say to Justice Spence this. There's personal jurisdiction and subject matter jurisdiction. A case – a court has jurisdiction or it does not. And if it does not have jurisdiction, then it can't hear a claim – court of claims, federal court. And this case – this court is that case. I don't think that a defendant should be precluded from raising issues in the form of a setoff. Otherwise, they run the risk of having to pay where they shouldn't have to. The limited issue that was raised by Star Creations was simply the one that, hey, you have our security deposit. Apply it to rent and we owe you nothing. And that, I think, is a – is very under the law. Well, could I interrupt and say then you're – are you saying that the landlord should then have filed a separate suit seeking damages under the lease and attorney's fees under the lease based upon the failure to put the property back into the position it was at the start of the term of the lease? That's exactly correct. And I'll – I have authority for that, which is the Milton case that we cite in the reply brief. And in the Milton case, the court actually – they were very sympathetic with the defendant who raised – defendant or plaintiff who raised the issue. I believe Thera was the defendant, but raised the issue in the form of a counterclaim that, wait a second, I've been damaged here. It's different types of damages. It's not property, per se, damage. But in that case, they were sympathetic. And the court actually in that case said that, quoting, in addition, Thera can pursue a claim for damages against Milton. And apart from the procedural irregularities in connection with the petitions for rule to show cause discussed below, we expressed no view regarding the court's decision to allow Thera to set off against rent due on the lease, amounts awarded as attorney's fees, and so on. And the preceding – or in the context of Milton, Milton also said there's other remedies in which there's a lot of contempt proceedings in that case. You can pursue your contempt proceedings. You can pursue your damage claims in another venue. And that's the whole purpose. If we – if we say in this particular case that this particular plaintiff is allowed to file these types of claims, what have we done to the act? We have made it an act that is expansive, which is not the purpose of the act under the two cases we cite, or the other cases, for that matter, that simply say this is – there's no room for a lot of discovery. It's a summary proceeding. It's designed to be a summary proceeding. And when you expand that, you take away certain rights and remedies of certain defendants. But in – there just wasn't the request about repairs that had been made to the property to return it to its original state. There was a pretty active complaint for lost profits due to being locked out. That doesn't relate in any way to the Forcible Entry and Detainer Act. I would agree with that. However, if you look at Campana, Campana's claim – so what's unique about Campana, and if I might, real briefly, one of the things that Campana says, and again, quoting, defendant argues that the plain language of the Forcible Detainer Act does not allow for a landlord to collect anything other than past due rent. And further, the plaintiff's claim to the unamortized improvement cost is not germane to the issue of possession. Two words, second district, we agree. So based on Campana – and I agree with you, Justice Hutchinson. I think that Milton is distinguishable that way. But if you look at the language of Milton, it is pretty instructive because it does limit this type of court's ability to hear the type of claim that it heard. It talks about motion practice discovery and the court being a court of special and limited jurisdiction, unable to hear claims beyond the unpaid rent, and the issue of possession. So if you look at Campana, I think it is, you know, the uniqueness of Campana or the specialness of that case is really helpful to start creations here because in addition, in that case, the one fact that jumped out at me is in that case, the notice that that landlord gave to the defendant tenant said, you are going to be on the hook for the unamortized expenses because you're in breach of this lease. I want you to dispossess yourself from this premises and I want you to vacate. And in that case, that court, Campana, this district said, no way. That's not unpaid rent. It's not due and payable and therefore you can't get it. Well, IPT didn't ask for that in their, as you said, three sentence complaint. They just asked for unpaid rent in the premises, right? In the three sentence complaint, which morphed into affirmative defenses in those affirmative defenses, by the way, I still can't explain to this court, and I apologize, how a trial court gave affirmative relief dollars on affirmative defenses. How did that happen that the trial court actually gave money? It should have been complaint, $109,000 what's owed, judgment or entry of order on that, counterclaim, entry of order, which Start Creations won because the court said, yeah, we're going to apply that $100,000 that was unapplied. And on the affirmative defenses, had they wanted to file a claim, they should have filed it in the form of a complaint. But what this trial court did was allowed this particular plaintiff to receive money on the affirmative defenses, which you can't get. You need to file a complaint with a prayer, with allegations that say not only do we want the past due rent, we want these other items which have a value of this so that there's a wherefore and a prayer for relief and a claim for damages. This is the first time that I can remember practicing law where an affirmative defense resulted in a money judgment. It can be an offset, right? But how did we get to a money judgment? And I know I have five minutes. And unless your time is up, no one has any further questions, you'll have an opportunity to make a rebuttal. Thank you. Mr. Lurie. Sorry. Entire argument in this case is predicated on their trying to characterize the cost of repairs. The issue of damages to the premises was framed when Star Creations filed its counterclaim. How could the court adjudicate Star's claim for a return of the security deposit without taking into account the deductions that IPT was claiming on account of the cost of repairs? Was the security deposit, I mean, the rent is about $51,000, almost $52,000 a month, according to the briefs. And that includes some of like the gas and electricity and those types of things, which would be considered rent. Was the security deposit, which doesn't amount to even two months worth of rent, if I have the numbers correct, was it designed just to address rent? Or was it designed just to address damages to the property? Or could it have been used for either? It was at the option of the landlord how to treat that security deposit. It could have been applied to rent, or it could have been applied to post-termination damages. And really, the condition of the premises was the proverbial elephant in the room, almost from the inception of the case. But by the beginning, they stopped paying rent according to the facts in January of 2016 through July 1st, and the complaints filed July 27th. So if you multiply that amount, $51,000, $52,000 times seven, there's still more money that's due in owing after the security deposit might be applied. That's certainly true. But what happened was that Star Creations paid use and occupancy beginning in, I believe, September of 2017, so that the amount of rent claims stayed the same because use and occupancy was being paid. Right. What about attorney's fees? Where does attorney's fees come into this? The court found that IPT was entitled to attorney's fees pursuant to the fee-shifting provision. Well, attorney's fees aren't rent, and they're not damage to the property. So how does the trial court have jurisdiction over attorney's fees? I have never seen a case where, in a fee-shifting provision, attorney's fees were not within the court's jurisdiction to award. Sorry, I couldn't hear you. On the counterclaim or on the rent claim? It was on the rent claim. You're saying this is a generic fee transferring or liability that would be theoretically even available in small claims? Yes. I thought the interesting thing about the Campana case that Star relied so heavily on is the Campana court never mentioned the word subject matter jurisdiction, not a word about jurisdiction. What the Campana court said was, you can join a claim for rent. That's what the statute says. And that's what IPT did. We joined a claim for rent. What the Campana court said was, unamortized installments of cost of improvements which were not due after the date of trial cannot be included in the damage award of trial. IPT never included damages to the premises in its complaint. It was Star that framed that issue. And it was evident even in March of 2017 that the parties were thinking that the disposition of this case was going to depend on how much of the security deposit was available to offset against rent. The case was continued in March of 2017 to allow the completion of the repair. And then most significant, I think, on June 1st, IPT presented a motion and told the court and Star exactly what it thought the trial was going to comprise of. First, the amount of rent. And second, the amount of the security deposit that would be available to offset against rent. At that point in time, Star could have said, oh, no, no. We don't want that issue included in trial. We want to go to trial just on the money count. The security deposit issue will be determined in a later case. But that's not what happened. There was an order, a June 12th order, in the record where IPT's counsel and Star's counsel were both there. Are you saying what I think you're saying, which is that Star invited error? Well, I don't think it was error. But if it was error, IPT certainly invited it. IPT would have said, oh, wait a minute. We're going to try the money count. And what would have happened if that actually went forward? IPT would have gotten a judgment for rent in the amount of $89,000 because the amount of rent was never really heavily contested. And conceivably, IPT would have received an award of attorney's fees, although less than it ultimately got because the issues were less. So let's say IPT would have walked away with a judgment for $100,000, $110,000. And then it would have been IPT's obligation, if it wanted the security deposit back, to file a complaint to get the security deposit back. And then we would have tried the issue of damages in a separate lawsuit. Whether that makes any sense in terms of judicial economy, I leave it to you. It doesn't seem very efficient to do that, especially since Star had every opportunity to obtain discovery, prepare for trial, and vigorously defended IPT's claim that it was entitled to deduct the cost of repair. I just don't think it would have made any sense practically to proceed in that fashion. The germaneness issue seems to me to be a bit of a red herring because possession was moot. Possession was moot as of February 28th. All of the dangers of encumbering the claim for possession with a counterclaim are really non-present. Possession was moot. This was just a money count, a counterclaim for set-off. The court could not have tried the counterclaim without dealing with IPT's right to deduct. And what Mr. Whitzer said was an IPT gap in judgment for the cost of repairs. Not so. The court awarded IPT rent in the amount of $50,000 of the amount of judgment for rent. After deducting the amount that was still available of the $100,000 security deposit from the $89,000 in rent, the court is saying that the judgment embodies rent. Absolutely. Thank you. No more questions? No. As far as the notice of the issue is concerned, well, I don't think I need to say anything about that. The briefs deal with that issue. No other questions. Thank you very much. Thank you. Mr. Whitzer. Thank you again, Justice McLeary. To answer Justice Hutchinson's questions on the security deposit, it's in the record, the actual lease, obviously. Which raises a point. I realize it's in the record, but I believe that if a document is at issue on an appeal, it should be included in the appendix of the brief. And it's not. We apologize for that. And if it helps at all, it's an E17? I mean, I know where it is. Okay. It's supposed to be, if a document is at issue, it should be attached as an appendix. Okay. I do deeply apologize for that. I do also want to point out that in answer to the security deposit question that you did raise, it does say that the landlord, so it's a letter of credit. The landlord called the letter of credit. That's in the record as a matter of fact. It's section 3.02 of the lease, the security deposit. It says that the landlord may apply all or part of the security deposit, which it took on the form of letter of credit, to any unpaid rent or any other charges. Again, this is what it says. From tenant or to cure any other defaults of tenant. If the landlord uses that security deposit, which it did here, it took it, the tenant shall restore upon 10 days notice. There's nothing in the record where this plaintiff, IPT, made any demand for any additional amounts for security deposit, issued a notice of default for that particular reason. So I just wanted to point that out too. And to counsel's point, if this is not rent, then how is it heard in a forcible and detainer case? If it's something other than rent, it falls right into Campana and Milton. If it's damages that are outside the scope of the forcible claim, how does this court have jurisdiction to hear it? So that's the question. If the landlord can apply, excuse me, that security deposit to the rent or to, I think there was one other term there and I don't have it in front of me, and you filed your affirmative defense but counterclaim in this action for return of that or application of that $100,000, why can't the landlord say, well, we're preferring or we're choosing to use it for damages that have occurred in our opinion to the property and therefore that was their response. Did you ever say you can't do that in a writing or in an oral motion? So to answer the latter part of your question first, I believe that we did. And I'll refer Justice Hutchinson to our motion in Limine where we said essentially we're not owed, we don't owe you rent. And, you know, the facts are the facts of the case. So regardless of that, they took it. Well, but if rent, and this is why this is somewhat confusing, and I know you were going to use an occupancy basis afterward, but from January of 2016 to July of 2016, was any rent paid? Yes, it was all paid by court order, every last ounce of it. What the $109,000 represented that they claimed originally to be unpaid that was found to be adjudicated to be $89,000 at trial, every month rent was paid up until possession was granted in or about March, end of February of 2017. Well, the lease ended in February of 2017 by its own terms. Yes. You were out, your client was out by that point. Correct. After the lawsuit was filed, I assume there was some agreement as to what was going to be paid while the settlement talks or whatever were going on. But what was the actual amount of the rent pursuant to the lease that was entered? What was the amount? So I apologize. I can tell you I can't be 100% precise, but let me say this, that when we started defending the lawsuit, the three-sentence lawsuit, we entered an agreed order, and the agreed order was the exact amount of the rent that was supposed to be paid under the lease, which when you add in taxes, other insurance, and the actual rent itself, operating expenses, equaled roughly in the neighborhood of $52,000, $53,000, $54,000. And forgive me if I'm wrong, but the point that I'd like to make is that 100% of the rent claim was paid through possession because of, A, the security deposit was taken, and B, so when possession was essentially given, given the fact that rent was liquidated to be $89,000, not $109,000, that means that rent was paid in full on the date of the filing of the complaint. And after the filing of the complaint, each month, Star Creations faithfully paid its rent. And if I, is it appropriate to just conclude, or do I just have to stop? No, you can just conclude. So a couple of things. I'd like to just say that Star Creations, I think the plaintiff, IPT, prevailed in some way on its counterclaim, or on its claim for unpaid rent in the form of $89,000. Star Creations prevailed on its counterclaim of $100,000. The affirmative defenses that were pled are affirmative defenses, and whether they prevail, that is IPT or not, it only means that they prevailed, which is an offset against any monies that they are found to be owed. And if you do the math, they were owed $89,000. Star Creations was owed $100,000. The affirmative defense, even if it said you're owed because the net would be $11,000, even if they said they're owed $60,000, no affirmative relief should have been granted. Star Creations and maybe IPT were equally prevailing parties on attorneys' fees. And finally, I didn't get into it, but just in conclusion, I would ask that you look at the notice provisions. The lower court did say that there was no default, or there's no finding of a default, and therefore no notice was required to be given by IPT to start a cure, which is raised in our brief, and I respectfully ask that you give consideration to that issue as well. And thank you for your time this morning. Thank you. We'll take the case under advisement. We have one more case on the call.